```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
AMBAC ASSURANCE CORPORATION,        :
                                    :
               Plaintiff,           :
                                    :       09 Civ. 5087 (JFK)
     -against-                      :
                                    :       OPINION & ORDER
ADELANTO PUBLIC UTILITY AUTHORITY,  :
                                    :
               Defendant.           :
-----------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 7, 2012

APPEARANCES

For Plaintiff Ambac Assurance Corporation:
David W. Dykhouse
Christos G. Yatrakis
Alexander Michaels
Patterson Belknap Webb & Tyler LLP


For Defendant Adelanto Public Utility Authority:
William M. Marticorena
A. Patrick Muñoz
Todd O. Litfin
Rutan & Tucker, LLP

Michael S. O'Reilly
E. Evans Wohlforth, Jr.
Gibbons, P.C.

**JOHN F. KEENAN, United States District Judge:**

     This action arises from the early termination of an interest rate swap agreement between Piper Jaffray & Company ("Piper Jaffray") and Defendant Adelanto Public Utility Authority, which is located in Adelanto, California (the "Authority" or "Defendant"). Plaintiff Ambac Assurance Corporation ("Ambac" or "Plaintiff"), a surety to the agreement, brings claims for reimbursement, breach of contract, and

specific performance as a result of an early termination payment it made to Piper Jaffray that has not been reimbursed by the Authority.  Before the Court are cross-motions for a protective order:  Ambac seeks to limit the topics explored in an upcoming deposition, and the Authority seeks an order that its depositions take place in California.  For the reasons that follow, Ambac's motion is denied in part and the Authority's motion is granted.

## I.   Background

Ambac, a Wisconsin corporation with its principal place of business in New York City, is in the business of surety and financial guaranty insurance.  The Authority is a public utility authority existing under the laws of California, with its principal place of business in Adelanto, California. (Am. Compl. ¶¶ 2-3).

In or about September 2005, the Authority issued $70,635,000 face amount of Variable Rate Revenue Bonds, 2005 Series A and B (Utility System Project) (the "Bonds").  The Bonds were underwritten by Piper Jaffray.  Ambac issued a policy of bond insurance with respect to the Bonds, insuring payment of the principal and interest thereon. (Id. ¶ 7).

Contemporaneously with its issuance of the Bonds, the Authority entered into an interest rate swap agreement (the

"Swap Agreement") with Piper Jaffray in order to hedge its risk as the issuer of the Bonds. The Swap Agreement stays in effect for the life of the Bonds, but it may be terminated upon the occurrence of certain events, such as a party's default or bankruptcy. In the event of an early termination of the Bonds, the Swap Agreement provides for certain payments to compensate for the termination. (Id. ¶¶ 8-10).

On September 7, 2005, Ambac issued a surety bond for the Swap Agreement (the "Surety Bond"). The Surety Bond provides that if the Authority were to fail to make certain payments required by the Swap Agreement, including certain termination payments, Ambac would make those payments. (Id. ¶ 11).

Ambac was not a party to the Swap Agreement, but it is specifically identified in it as the issuer of the Surety Bond and is given the title "Swap Insurer." The Swap Agreement further provides that the Authority shall unconditionally reimburse Ambac, as the Swap Insurer, for any incurred fees, costs, or other expenses resulting from a breach of the Authority's obligations under the Swap Agreement. The Authority is also obligated under the Swap Agreement to reimburse Ambac for any amounts paid under the Surety Bond and any costs of collection and enforcement thereof, with interest at a specified rate. (Id. ¶¶ 12-14).

On November 5, 2008 Moody's Investors Service downgraded Ambac's credit rating. Pursuant to the Swap Agreement, the downgrade of Ambac's credit rating required the Authority either to replace Ambac as the Swap Insurer or to obtain or maintain an unenhanced rating on the Bonds at or above a certain minimum within 30 days. The Authority's failure to satisfy either of those tasks within that time period would allow Piper Jaffray to terminate the Swap Agreement. According to Ambac, the Authority did not make a good faith effort to satisfy the terms of the Swap Agreement in either manner. Piper Jaffray chose not to immediately terminate the Swap Agreement; instead, in a letter dated February 5, 2009, Piper Jaffray stated that it "would like to resolve this matter without terminating," but it would do so if the Authority did not make "substantial and prompt progress" in resolving its financial difficulties. (Id. ¶ 16).

The Authority failed to resolve its financial difficulties to the satisfaction of Piper Jaffray, and as a result, Piper Jaffray terminated the Swap Agreement and demanded a termination payment of $4,524,000 by notice to the Authority dated June 1, 2009. That same day, June 1, 2009, Ambac filed the instant action against the Authority, seeking exoneration and to compel the Authority to make the termination payment. Ambac made that $4,524,000 payment to Piper Jaffray on June 3, 2009, two days

after the notice of termination because, according to Ambac, the Authority "failed to pay the termination payment in a timely manner," rendering Ambac liable for that amount pursuant to its obligations under the Surety Bond. (Id. ¶ 26). After making the termination payment to Piper Jaffray, on June 24, 2009, Ambac amended the Complaint to assert claims for breach of contract, reimbursement, and specific performance.

The Authority moved to dismiss the Amended Complaint on the grounds that this Court lacked subject matter jurisdiction and that venue in the Southern District of New York was improper. On March 15, 2010, the Court denied the Authority's motion to dismiss, and the Authority subsequently answered the First Amended Complaint and brought counterclaims against Ambac. The Authority later filed its Amended Counterclaim, and Ambac moved to dismiss the Amended Counterclaim for failure to state a claim for which relief can be granted. In an Opinion and Order dated November 14, 2011, the Court dismissed each of the Authority's counterclaims. Ambac Assurance Co. v. Adelanto Pub. Util. Auth., No. 09 Civ. 5087, 2011 WL 55534444 (S.D.N.Y. Nov. 14, 2011)

The discovery deadline, which the Court extended once, was March 2, 2012. (Pl. Mem. at 4). On January 21, 2012, the Authority sent a notice to Ambac, requesting a deposition on March 1, 2012 listing seventeen topics for examination. (Id. at

5

5). Ambac, having already produced over 10,500 pages of documents to the Authority, objects to the broad nature of the proposed deposition and certain categories. (Id. at 5). Ambac asserts that several of the areas of inquiry were effectively eliminated when the Court dismissed the Authority's counterclaims in its November Opinion. According to Ambac, several of the Authority's affirmative defenses overlap with the dismissed counterclaims, and discovery should not be permitted. Consequently, Ambac is seeking a protective order to eliminate the following ten topics from Discovery:

1. Ambac's marketing of financial guaranty insurance policies;
2. Ambac's knowledge of Ambac's credit rating by any Ratings Agencies;
3. Ambac's use of financial guarantee insurance policies for bonds that tie the credit rating of the insured bond to the credit rating of the insurer;
4. Ambac's use of financial guarantee insurance policies as credit enhancement for bonds;
5. Ambac's marketing of itself as a financially stable, risk-averse institution;
6. Ambac's marketing of itself as a company with a conservative investment and underwriting policy;
7. Ambac's business of insuring Residential Mortgage Backed Securities and Collateralized Debt Obligations;
8. Ambac's business of investing in Residential Mortgage Backed Securities and Collateralized Debt Obligations;
9. The negative impact upon Ambac's credit rating of insuring Residential Mortgage Backed Securities and Collateralized Debt Obligations;
10. The negative impact upon Ambac's credit rating of investing in Residential Mortgage Backed Securities and Collateralized Debt Obligations.

According to the Authority, these topics relate to its affirmative defenses of unclean hands, frustration of purpose, failure to act equitably, unconscionability, bad faith, estoppel, and equitable estoppel, which are still properly in the case. The Authority opposes Ambac's motion for a protective order, and has cross-moved for an order that the upcoming depositions of Authority personnel be held in Adelanto, California, not New York City. The Court has stayed discovery in order to decide these cross motions.

## II.  Discussion

### A.  Applicable Law

A court may issue "an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). This rule serves in part to protect parties' privacy interests. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 n.21 (1984). Rule 26(c) "allows for the crafting of appropriate relief, including 'that the disclosure or discovery may be had only on specified terms and conditions.'" Flaherty v. Seroussi, 209 F.R.D. 300, 304 (N.D.N.Y. 2002) (quoting Fed. R. Civ. P. 26(c)). "Protective orders can take a variety of forms in order to fit the circumstances of the case." Standard Inv. Chartered, Inc. v.

Nat'l Ass'n of Sec. Dealers, Inc., No. 07 Civ. 2014, 2008 WL 199537, at *2 (S.D.N.Y. Jan. 22, 2008).

### B. Deposition Topics

In its November 2011 Opinion, the Court considered each of the Authority's amended counterclaims individually and granted dismissal for one of two general reasons: (1) the Court determined that the counterclaim was deficient as pleaded, or (2) the Court made a legal conclusion that rendered the Authority's counterclaim deficient. The distinction between these two bases for dismissal is significant here. Where the Court came to a legal conclusion dismissing a counterclaim, and where the proposed discovery would only be relevant to factual claims already precluded by those legal conclusions, then that discovery should not be allowed. See Gencarelli v. Cablevision Sys. Corp., No. 10 Civ. 4092, 2012 WL 1031441, at *1 (E.D.N.Y. Mar. 27, 2012); De Ponceau v. Bruner, No. 09 Civ. 0605, 2012 WL 1030415, at *13 (N.D.N.Y. Feb. 21, 2012) (noting that a court's previous dismissal of a claim on legal grounds may narrow the permissible grounds for discovery). A mere pleading deficiency with respect to a certain counterclaim, however, will not prevent the Authority from asserting an analogous affirmative defense and obtaining discovery. The Court will review its findings from the November 2011 Opinion, considering each

counterclaim in turn and whether a pleading deficiency or legal conclusion led to its dismissal.

First, the Court dismissed the Authority's breach of contract counterclaim based upon a legal conclusion, holding that "Ambac never assumed a contractual duty to maintain a certain credit rating." Ambac Assurance Corp., 2011 WL 5553444, at *6.  Further, the Court noted that California law does not impose a continuing duty to disclose relevant financial information. Id.

Next, in dismissing the Authority's counterclaim of fraud and negligent misrepresentation, the Court distinguished statements made by Ambac prior to the Authority's purchase of bond insurance in 2004 from Ambac's statements after purchasing the bond insurance.  While the court made the legal conclusion that Ambac did not have a legal duty to disclose "post-transaction conduct of its business," it also found that "the Authority does plausibly allege that it relied on one statement . . . originally made [prior to the 2004 transaction,]" but ultimately dismissed the counterclaim as to pre-2004 statements due to a pleading deficiency. Id. at *7.

The Court's dismissal of the Authority's negligence claim was based upon a pleading deficiency:  the Authority "failed

adequately to plead a cause of action of negligence against Ambac." Id. at *8.

The Court drew a legal conclusion in its dismissal of the counterclaim for breach of the implied covenant of good faith and fair dealing, determining that California law's "special obligation" of insurers to settle claims without litigation "cannot be a basis for the Authority's [counterclaim]." Id. at *9.  Further, the Court noted that Ambac had fully performed its contractual obligations. Id.

The Authority's unjust enrichment or restitution counterclaim was dismissed because the Court held that the counterclaim "could not stand as pleaded." Id. at *10.  The Court did not make a legal conclusion in connection with this counterclaim.

Finally, the Court dismissed the Authority's counterclaim for promissory estoppel because the Authority failed "to identify any promise made by Ambac." Id.  This dismissal was based upon a pleading deficiency, not a legal conclusion, and the Court did not adjudicate the Authority's factual assertions relating to this counterclaim.

In sum, the counterclaims for breach of contract and good faith and fair dealing were dismissed as a matter of law and the counterclaim for fraud and negligent misrepresentation was

dismissed as a matter of law only with respect to post-2004 statements.  As a result, to the extent the Authority has interposed affirmative defenses based upon the counterclaims that fail as a matter of law, discovery would be inappropriate with respect to these issues.  By contrast, the remaining counterclaims – negligence, unjust enrichment, and fraud and negligent misrepresentation as to pre-2004 statements – were dismissed based upon pleading deficiencies.  Consequently, discovery in connection with the affirmative defenses that coincide with these counterclaims will be permitted to go forward.

The Court next considers whether any of the counterclaims eliminated by legal conclusions in the Court's November 2011 Opinion preclude the Authority's affirmative defenses of unclean hands, frustration of purpose, failure to act equitably, unconscionability, bad faith, estoppel, and equitable estoppel. To advance these affirmative defenses, the Authority has asserted myriad factual allegations.  Specifically, the Authority has alleged "misconduct" and "risky behavior" by Ambac, and questioned Ambac's disclosures prior to 2004. (Def. Ans. ¶¶ 43, 55, 60 61, 62).  As discussed above, the Court has not ruled on these factual allegations.  Therefore, none of the affirmative defenses can be discounted at this stage of the

11

litigation.  Because the deposition categories identified by the Authority relate to these affirmative defenses, a protective order is not warranted with respect to any of the Authority's proposed topics.

### C.  Undue Burden

Ambac has alternatively argued that the Authority's proposed deposition topics would unduly burden Ambac and thus should be limited in scope.  Specifically, Ambac has asserted that the Authority seeks discovery on "all of the marketing Ambac has ever done for its primary lines of business throughout its 40-year history all over the world, [and] all of the transactions involved mortgage-backed securities or collateralized debt obligations that Ambac has ever had about its credit rating with any rating agency." (Pl. Reply at 7). The Authority responds that the proposed discovery is not overly burdensome, and is necessary to the Authority's defense.  It represents that the information it seeks is "fairly basic and straightforward . . . .  It would seem that certain individuals within positions of authority at Ambac would know such information." (Def. Br. at 10).

The party seeking a protective order bears the burden of establishing that good cause for the order exists. Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 (2d Cir. 2004).  Good cause

is established by "demonstrating a particular need for protection." Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1121 (3d Cir. 1986).  The objecting party must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984).  Instead, the objecting party must "show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." Id.

Ambac has made a compelling argument that, contrary to the Authority's assertion, "individuals within positions of authority" at Ambac would not have knowledge of Ambac's business practices dating back forty years.  Indeed, Ambac's personnel and its policies have likely changed markedly in four decades.  However, the Authority asserts that the requested discovery is essential to its defense because it could uncover how "Ambac's actions resulted in the eventual downgrade of its credit rating that led to the current lawsuit" (Def. Br. at 5).  Therefore, some degree of discovery is warranted in order to permit the Authority to develop potential defenses.  To balance the

13

interests of both parties, the Court will limit the time period of the requested discovery to the past fifteen years, dating back from the Complaint. See Eastman Kodak Co. v. Camarata, 238 F.R.D. 372, 376 (W.D.N.Y. 2006) (imposing a protective order to limit the scope of a subpoena to a fifteen-year time period).

### D.  Deposition Location

Ordinarily, the proper place for taking an individual's deposition is his or her place of residence. Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505, 517 n.10 (S.D.N.Y. 2004).  If a plaintiff notices an individual defendant's deposition at a location other than defendant's residence or place of business and defendant makes an objection, the plaintiff has the affirmative burden of demonstrating "peculiar" circumstances which compel the Court to suspend the general rule and to order that depositions be held in the other location. See Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 549 (S.D.N.Y. 1989).  The rationale for this presumption is that plaintiff has exercised a choice as to the action's forum in bringing the suit and should therefore bear reasonable burdens of the litigation. Id. at 550.  However, this presumption is not applicable in a suit in which plaintiff had little choice of forum.  For instance, where the parties are in a particular forum because of a forum selection clause, a deposition is not automatically

14

sited in the defendant's favor.  Instead, the Court must consider whether "factors of cost, convenience, and litigation efficiency militate in favor of" an alternate location. Id.

Here, the Swap Agreement contained a forum selection clause that constrained Plaintiff to file suit in the Southern District of New York.  Thus, the presumption in favor of the Defendant's residence is defeated and the Court will address the factors of cost, convenience, and efficiency.  As to cost, neither side has the stronger hand:  the choice is between having Ambac's attorneys go to California and the Authority's witness traveling to New York.  With respect to convenience, the Authority offers a more compelling argument:  A witness losing three days of work due to travel would burden the Authority, a small government entity.  The Court is not convinced that the three-hour time difference between New York and California weighs in favor of holding the deposition in New York, as Ambac has asserted. Indeed, any efficiency that would be achieved in holding the deposition in New York is outweighed by the inconvenience it would cause the Authority.  Therefore, the Court finds that the depositions of Authority personnel should take place in Adelanto, California. See Topps Co., Inc. v. Productos Stani Sociedad Anomina Industrial y Commercial, No. 99 Civ. 9437, 2001 WL 406193, at * 4 (S.D.N.Y. Apr. 20, 2001) (finding that the

factors of cost, convenience, and efficiency weighed in favor of holding a deposition where the defendant resides, even though the plaintiff's choice of forum was dictated by a forum selection clause).

### III. Conclusion

For the foregoing reasons, Ambac's motion for a protective order is denied in part, and the Authority's motion for an order as to the place of the depositions is granted. The discovery deadline is extended until July 20, 2012. All future discovery disputes are to be presented to Magistrate Judge Pitman. A status conference will be held on July 23, 2012 at 11:30 a.m.

**SO ORDERED.**

Dated:   New York, New York
         May 7, 2012

*/s/ John F. Keenan*
John F. Keenan
United States District Judge