USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 26, 2014

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
AMBAC ASSURANCE CORPORATION,         :
                                     :
            Plaintiff,               :
                                     :    No. 09 Civ. 5087 (JFK)
    -against-                        :    **OPINION & ORDER**
                                     :
ADELANTO PUBLIC UTILITY AUTHORITY,   :
                                     :
            Defendant.               :
------------------------------------X

APPEARANCES

For Plaintiff Ambac Assurance Corporation:

    PATTERSON BELKNAP WEBB & TYLER LLP
    By:  David W. Dykhouse
        Christos G. Yatrakis
        Alexander Michaels

For Defendant Adelanto Public Utility Authority:

    RUTAN & TUCKER, LLP
    By:  William M. Marticorena
        A. Patrick Muñoz
        Todd O. Litfin

    GIBBONS P.C.
    By:  E. Evans Wohlforth, Jr.
        Samuel I. Portnoy

**JOHN F. KEENAN, United States District Judge:**

    On March 6, 2014, the Court granted the parties' cross-motions for entry of final judgment on certain claims and counterclaims.  Plaintiff Ambac Assurance Corporation ("Ambac") now moves pursuant to 28 U.S.C. § 1963 for permission to register that judgment in the Central District of California.  Defendant Adelanto Public Utility Authority (the "Authority") opposes Ambac's motion and cross-moves for a stay of the

execution of the judgment on a partial supersedeas bond.  For the reasons that follow, Ambac's motion for leave to register is granted, and the Authority's cross-motion for a stay is denied.

## I. Background

In its November 14, 2011 opinion, this Court dismissed all seven claims asserted in the Authority's First Amended Counterclaim. See Ambac Assurance Corp. v. Adelanto Pub. Util. Auth., No. 09 Civ. 5087, 2011 WL 5553444, at *10 (S.D.N.Y. Nov. 14, 2011).  On January 11, 2013, this Court granted summary judgment for Ambac as to liability and damages for Ambac's first claim and partial summary judgment as to liability on Ambac's second and fourth claims. See Ambac Assurance Corp. v. Adelanto Pub. Util. Auth., No. 09 Civ. 5087, 2013 WL 139557, at *7 (S.D.N.Y. Jan. 11, 2013).  On August 29, 2013, this Court set damages for the second and fourth claims. See Ambac Assurance Corp. v. Adelanto Pub. Util. Auth., No. 09 Civ. 5087, 2013 WL 4615404, at *7 (S.D.N.Y. Aug. 29, 2013).  Only Ambac's third claim for specific performance remains pending.

In an Opinion filed on March 6, 2014, the Court granted the Plaintiff's motion to enter final judgment on Plaintiff's first, second, and fourth claims, and also granted Defendant's cross-motion to enter final judgment on Defendant's first, second, third, fourth, fifth, sixth, and seventh counterclaims. See Ambac Assurance Corp. v. Adelanto Pub. Util. Auth., No. 09 Civ.

5087, 2014 WL 888202, at *1 (S.D.N.Y. Mar. 6, 2014).  The Court entered an amended final judgment on March 18, 2014. (ECF No. 101.)  The Authority appealed that judgment on April 9, 2014. (ECF No. 103.)

Ambac now seeks leave to register the judgment in the Central District of California.  The Authority contends that registration is inappropriate and requests that execution of the judgment be stayed on a partial supersedeas bond.  Because Defendant argues that a stay would obviate the need for registration, the Court considers whether a stay is appropriate first.

## II. Discussion

### A. Stay of the Judgment

Under Rule 62(d) of the Federal Rules of Civil Procedure, a party may obtain a stay of the enforcement of an appealed judgment by posting a supersedeas bond. See Fed. R. Civ. P. 62(d).  The district court also has discretion to stay enforcement on a partial supersedeas bond "if doing so does not unduly endanger the judgment creditor's interest in ultimate recovery." Morgan Guar. Trust Co. of N.Y. v. Republic of Palau, 702 F. Supp. 60, 65 (S.D.N.Y. 1988), vacated on other grounds, 924 F.2d 1237 (2d Cir. 1991).  In deciding whether to exercise this discretion, the court considers "(1) whether the petitioner is likely to prevail on the merits of his appeal, (2) whether,

3

without a stay, the petitioner will be irreparably injured, (3) whether issuance of a stay will substantially harm other parties interested in the proceedings, and (4) wherein lies the public interest." Marcoux v. Farm Serv. & Supplies, Inc., 290 F. Supp. 2d 457, 485 (S.D.N.Y. 2003) (internal quotation marks omitted).  The judgment debtor seeking such a stay bears the burden of showing "specific reasons" why a stay is appropriate. See Network Enters., Inc. v. APBA Offshore Prods., Inc., No. 01 Civ. 11765, 2007 WL 398276, at *2 (S.D.N.Y. Feb. 5, 2007).

With respect to the first factor, it is sufficient to show that the case presents "a substantial case on the merits" concerning difficult issues. Morgan Guar., 702 F. Supp. at 65. The Authority contends that this is such a case because there are hard questions concerning subject matter jurisdiction under the Johnson Act, 28 U.S.C. § 1342, and whether Ambac is entitled to reimbursement for a termination payment that was partially triggered by a decrease in Ambac's credit rating.

These issues were not difficult when first considered, and Defendant does not provide compelling reasons for second-guessing.  This Court previously rejected the Johnson Act argument on several grounds, primarily because the Authority had not pointed to an "order affecting rates" and because the specific performance claim – which is still pending and not on appeal - was the only claim that might even arguably be

4

precluded by § 1342. See Ambac Assurance Corp. v. Adelanto Pub. Util. Auth., 696 F. Supp. 2d 396, 400-01 & n.2 (S.D.N.Y. 2010). On the question whether Ambac is entitled to termination fees caused by its credit downgrade, the Authority had argued that Ambac acted with "unclean hands" and had a duty to maintain a certain credit rating. Ambac Assurance, 2013 WL 139557, at *4. The Court determined that the unclean hands argument failed because the Authority presented no evidence of "unconscionable, bad faith or inequitable conduct," and that Ambac never had a contractual duty to maintain its credit rating. Id. at *4-6.

Although the Authority asserts that these issues present difficult questions, it provides no reasons to support this contention.  Defendant cites no caselaw indicating that other courts have wrestled with these issues and reached different conclusions than this Court did, nor does it provide an account of how this Court erred.  The Authority merely invites the Court to doubt its previous rulings without explaining what should give the Court pause.  Thus, there is no reason for the Court to conclude that the appeal presents a "substantial case on the merits," and the Court concludes that this factor does not weigh in favor of a stay.

As to the second factor, the Authority points to caselaw suggesting that a severe impact on a judgment debtor's finances and the mere threat of insolvency can be sufficient to show

5

irreparable harm. See, e.g., Network Enters., 2007 WL 398276, at *2 (finding the factor satisfied where judgment debtor did not have the resources to post full security and averred that he would likely have to file for bankruptcy); Morgan Guar., 702 F. Supp. at 66 (finding a severe impact after considering the judgment debtor's anticipated revenue compared to its anticipated expenditures).  The Authority maintains that it would have to post 100 percent collateral in order to secure a full supersedeas bond in the amount of $8.6 million. (Goldstein Decl. ¶¶ 6-7.)  According to a conclusory statement in the declaration provided by the Authority's Assistant Finance Director, the Authority will be irreparably injured if it has to pay the full bond because to do so will "severely impact" its finances and "potentially put at risk its ability to provide water and sewer service." (Martinez Decl. ¶ 5.)

    Although it is obvious that having to pay $8.6 million would negatively impact any debtor's balance sheet, the Martinez Declaration provides no context for how exactly the Authority's finances would be affected.  Neither the Authority nor its Assistant Finance Director supports the declaration with any financial statements, and neither explains what proportion of the Authority's finances the $8.6 million represents.  As to the continuation of the Authority's services, the risk that such

services would be impeded is not quantified, other than to proclaim that it could "potentially" happen. (Id.)

The Court is left to wonder just how severe of an impact the payment would have on the Authority's finances and services. The Authority gives no indication that posting a full bond would have such a negative impact that it would lead to insolvency. Thus, it is entirely unclear that having to post the full bond would have a "severe impact" on the Authority's finances or its ability to provide services. As such, this factor does not weigh in Defendant's favor.

In addressing the third factor, courts have considered the prejudice to the creditor. See, e.g., Yukos Capital S.A.R.L. v. OAO Samaraneftegaz, No. 10 Civ. 6147, 2014 WL 81563, at *4 (S.D.N.Y. Jan. 9, 2014); Teachers Ins. & Annuity Ass'n of Am. v. Ormesa Geothermal, No. 87 Civ. 1259, 1991 WL 254573, at *4 (S.D.N.Y. Nov. 21, 1991). The Authority argues that Ambac will not be prejudiced by a stay because Defendant is offering to post a $2 million bond and Defendant's ability to pay will improve the longer it operates during the appeal. However, this proposal does not eliminate the potential for prejudice to Ambac. The posting of a full bond now would secure Ambac's right to full payment in the event it wins on appeal. The Authority's suggestion offers no assurance that it will be able to pay the full amount after the appeal, only that it might be

in a better position to do so.  It asserts that its financial condition has improved over the last year as it has decreased expenses and increased revenues. (Martinez Decl. ¶ 6.)  While the Court has no reason to doubt that the Authority's financial condition has improved (indeed, Ambac does not contest this), it is entirely unclear how much it has improved or whether this trend will continue such that full payment to Ambac will not be jeopardized if enforcement is stayed.  Therefore, this factor does not favor a stay.

On the final factor, Defendant argues that the public interest favors a stay because the Authority is a municipal utility and enforcement would threaten its ability to provide services to the people of Adelanto.  But the public interest would only be harmed if posting the bond would cause the Authority to be unable to perform its services.  As previously explained, the Authority has not presented any evidence to show what effect posting a bond would have, and thus has not demonstrated that its services would be detrimentally affected such that the public would be harmed.

Having considered each factor, it is clear that the Authority's argument essentially parrots the standard and is mainly conclusory.  The Authority having failed to carry its burden of providing "specific reasons" why a stay on partial

8

supersedeas would be appropriate, the Court denies the Authority's cross-motion for such a stay.

### B. Registration of the Judgment

The final judgment entered on March 18, 2014 is enforceable. See Computech Int'l Inc. v. Compaq Computer Corp., No. 02 Civ. 2628, 2004 WL 2291496, at *5 (S.D.N.Y. Oct. 12, 2004) (granting a Rule 54(b) motion and denying a stay of enforcement). A party pursuing enforcement may register a judgment "for the recovery of money or property" in another district "when the judgment has become final by appeal or expiration of the time for appeal." 28 U.S.C. § 1963. When a judgment is appealed, the district court that entered the judgment may nevertheless order registration in another district "for good cause shown." Id. Courts in the Southern District of New York have consistently held that good cause is established when a judgment debtor has (1) substantial property in the other district and (2) insufficient property in this district. See, e.g., HSH Nordbank AG N.Y. Branch v. Swerdlow, No. 08 Civ. 6131, 2010 WL 1957265, at *1 (S.D.N.Y. May 14, 2010); Pereira v. Cogan, No. 00 Civ. 619, 2003 WL 22510410, at *1 (S.D.N.Y. Nov. 4, 2003); Owen v. Soundview Fin. Grp., Inc., 71 F. Supp. 2d 278, 279 (S.D.N.Y. 1999). A judgment creditor need not provide exact evidence of the debtor's assets, and good cause may be supported by a "lesser showing." See Lankler Siffert & Wohl, LLP v. Rossi,

9

No. 02 Civ. 10055, 2004 WL 1627167, at *2 (S.D.N.Y. July 21, 2004) (unrebutted asset searches sufficient); <u>Owen</u>, 71 F. Supp. 2d at 279 (unrebutted property records and trial testimony sufficient).

The Authority argues that a stay of the judgment would eliminate good cause. Although it cites no authority for that proposition, some courts have indicated that the posting of a bond is at least a relevant consideration when evaluating good cause. See <u>Lankler Siffert & Wohl</u>, 2004 WL 1627167, at *2 (deferring registration fourteen days to give judgment debtors that had indicated they intended to post a bond an opportunity to do so); <u>Cheminova A/S v. Griffin LLC</u>, 182 F. Supp. 2d 68, 80 (D.D.C. 2002) (denying foreign registration where the judgment debtor made a "good faith offer" to pay arbitration award or post a supersedeas bond). To the extent that a stay is relevant, the Authority has not posted a bond nor has it given any indication that it intends to do so. Moreover, as already addressed, Defendant is not entitled to a stay on a partial supersedeas bond. Thus, the only relevant consideration is the location of the Authority's assets. See <u>Donel Corp. v Kosher Overseers Ass'n of Am., Inc.</u>, No. 92 Civ. 8377, 2001 WL 1512589, at *2-3 (S.D.N.Y. Nov. 28, 2001) (finding good cause after rejecting a stay of enforcement on partial supersedeas and evaluating the location of assets).

Ambac's attorney performed public record searches for real property held in the Authority's name.  The search returned eight properties in San Bernardino County, California. (Dykhouse Decl. ¶ 6, Ex. A.)  Public record searches revealed no real property in the other forty-nine states. (Dykhouse Decl. ¶ 6.)

Ambac also provides the Authority's publicly available financial statement from June 30, 2012. (Dykhouse Decl. Ex. B.) The financial statement indicates that the Authority has $88,090,745 in total assets and $3,040,877 in total net assets. (Dykhouse Decl. Ex. B, at 3-4.)  Ambac's attorney avers that he is unaware of any assets that the Authority has outside of California. (Dykhouse Decl. ¶ 11.)  Defendant does not rebut Ambac's evidence, and it is thus presumed true. See Donel Corp., 2001 WL 1512589, at *2.  Moreover, it makes sense that the Authority's property and assets would be in California since it is a public utility that provides water and sewer service for Adelanto, California. (Martinez Decl. ¶ 3.)  Based on the evidence presented, the Court finds that the Authority has insufficient property in this district and has substantial property in the Central District of California.  Thus, "good cause" exists within the meaning of § 1963, and Ambac may register the judgment in the Central District of California.

11

### III. Conclusion

For the foregoing reasons, the Authority's motion to stay enforcement of the judgment on a partial supersedeas bond is denied. Ambac's motion for authorization to register the judgment in the Central District of California is granted.

**SO ORDERED.**

Dated:   New York, New York
         June 26, 2014

*/s/ John F. Keenan*
John F. Keenan
United States District Judge